Good morning. My name is Anne Traum. I'm appearing on behalf of Mr. Carrasco, and I would like to reserve two minutes for rebuttal. I'll try to keep my eye on the clock. My client claims that the district court erred in this case by adjudicating him an armed career criminal because his 1991 Arizona conviction for aggravated assault does not categorically qualify as a violent felony. I'd like to make three points this morning in focusing on the definition of aggravated felony and why it doesn't qualify under the categorical approach. The first is that the Arizona statute itself and the Arizona Supreme Court's decision in FIERA, which I cited in my brief, make clear that no physical force or actual violence is required to be convicted of aggravated assault of a peace officer under the Arizona statute. Secondly, this Court's decision in Serran-Sanchez can be harmonized with FIERA and the position that my client is advocating. And I really view my third point is that I think that this Court, this decision, this case, hits sort of a crossroad between Serran-Sanchez and FIERA. If this Court chooses to harmonize Serran-Sanchez and FIERA, this Court's law interpreting the Arizona aggravated assault statute for purposes of Federal analysis, be it crime of violence or violent felonies in this case, would be consistent. If this Court, as the government I think is proposing, mechanically applies Serran-Sanchez to preclude relief for my client in this case, then I see this Court as sort of taking a different direction from where the Arizona Supreme Court, how the Arizona Supreme Court has interpreted its own aggravated assault statute. And that sort of creates a rift or conflict between what this — how this Court is viewing Arizona law and how the Arizona court itself views the statute of conviction at issue here. Serran-Sanchez, in my view, did really three things. First and most importantly, it considered — it did a categorical analysis of a different statute of conviction. That was an aggravated assault committed with the use of a deadly weapon or dangerous instrument. And the statute was subsection 13-1204A2. It held, in doing that analysis, that an aggravated assault from Arizona committed with the use of a deadly weapon satisfied the definition of crime of violence as a categorical matter, as defined in 18 U.S.C. Section 16, and that it satisfied both A and B definitions in that — for that definition. And finally, and I think really most, the Court's focus in — in Serran-Sanchez was that reckless conduct, which was the issue presented in that case, was sufficient to satisfy the use — the use, primarily, the use of physical force aspect in that case. So in Serran-Sanchez, the Court was considering — there was no issue in Serran-Sanchez that there was physical force, as that Court defined it, to mean actual violence. The issue was really — you clearly had the physical force. The issue was whether reckless use of that physical force was sufficient. And when they did that analysis, they were really focusing on that use of a deadly weapon. This case really presents an entirely different scenario, where we don't have a deadly weapon. The — what we really have is a simple assault, as defined by Arizona law, and we have a particular class of victim, because the issue — the particular statute of conviction in my case is that this person committed a simple assault knowing — knowing that the person — that the victim was a peace officer. There's, in this particular instance, no use of physical force, because, as Fierro makes perfectly clear, and the statute itself, I think, makes clear. Kagan. Well, you're talking into the categorical approach. Anderson. Right. Kagan. I mean, the modified might yield otherwise. We don't know. Anderson. There is a possibility that the modified could yield otherwise. In this case, what we — in this case, in the analysis and the record that exists so far, it hasn't done so, because what was before the district court was — and I think this is at page 49 and 50 of the record. Just want to make sure. Kagan. Right. I agree that in this record. But if you went on that argument, they would — they still could prevail under a modified. Anderson. Exactly. Under Matthews, for example, they get a second bite at the apple to show that there's really more here, like they have a plea transcript. Because what we have here is a plea memorandum. If they have a plea transcript that shows that my client admitted to something more involving physical force, then you could, under the modified categorical approach, there would be an opening there. What we have so far, sort of categorically, my position is no. There's no use of physical force categorically for aggravated assault of a peace officer. That would be consistent with Fierro. And under the modified categorical approach, based on what we have in the record so far, they can't win. If they got a second bite at the apple, who knows if they could prove that. Kennedy. Okay. So you're saying either under the categorical approach or modified approach, there's no showing of physical force. That's your practice. What about imprisonment in exceeding one year? Well, I'm happy to address that. My position on this has been, in my briefs, is I sort of have three points. One is that, obviously, the Arizona legislature has changed it. Changed it. And we think it's correct to view the prior conviction used in an ACCA case, the prior conviction, at the time that the instant offense was committed or at the time that the person is being sentenced on the instant offense. And taking that approach would really be consistent with what this Court has said in the illegal reentry context, that you look, for example, at whether the prior is an aggravated felony at the time that the illegal reentry is committed, not at some earlier time. And so you really sort of take a picture of that conduct when the instant offense is committed to see what that prior really meant. And obviously, we're not challenging his felony status. We're not challenging that prior conviction in and of itself like a habeas case. The second point is that the government argues that under Arizona law, you can still be sentenced to more than a year under Section 13702, which is a separate statute which permits a court to go above and beyond the presumptive maximum in cases where there's some kind of specific aggravator. Let me wait. I have just one thing I want to go back on. You're saying that take the law at the time of the federal sentencing, not at the time of the prior conviction? That's correct. That's what that's ‑‑ there's two cases that are discussed in the briefing. And the case that I rely on is the Sixth Circuit case in U.S. v. Morton. And in Morton, the court said, one, we want to defer to how the state classifies ‑‑ the state legislature classifies its crimes and defer to the policy changes that they've made. All right. But what if the language of the statute itself, so if you're looking at state policy, but what if the language of the statute itself says that it's not retroactive? Isn't that a strong state policy pretty much right there in the language of the statute? I think it is. And what you're referring to is basically the Fifth Circuit's approach in Enohoso, which is what the government cited. Because the reason I don't think it's so significant is because the reason for doing ‑‑ for making that statement about prospective retroactive in the statute itself does not have anything to do with the federal law inquiry that we're going to be doing in this case at the time of sentencing. That statement by a legislature is a purely sensible one and sort of the presumptive one, because ‑‑ No, it's not. I mean, if they use the words, it's different when you're glaringly looking at the words than if the words aren't there. You can't pretend that they're not there. No, and I don't pretend that. I mean, obviously, they're there, and they have some significance. I think the significance must be viewed with respect to what the state legislature is doing and what the federal court is doing. And what the state legislature is doing is partly saying we're not going to give anyone the benefit or change their conviction based on this, and we're not challenging the conviction or the felony statute. I guess I don't know any statutory construction that says you give legislative, you know, intent that that ever trumps the plain language of a statute. Well, I guess what ‑‑ I don't think that we're trying to trump the plain language of the statute. I think what the federal interest here is to actually give deference and respect to the way that a state legislature has chosen to classify a crime. And when they've, in this instance, made a crime less serious, that is significant. I'd like to reserve my balance of my time so I at least have some rebuttal. You're relying primarily on Morton, is it? Yes. Morton seems to be really ‑‑ Is that the Sixth, Seventh Circuit? I believe it's Sixth Circuit. Sixth Circuit. Okay. And, of course, the Fifth Circuit is against you. Yes. Okay. Correct. Thank you. Good morning. William Reed from the United States Attorney's Office in Las Vegas, Nevada. I'm going to ‑‑ I'd like to first address what perhaps would be Ms. Traum's strongest argument, and then I'll address the other if time permits. The strongest argument I would suggest that she has here today, which the government agrees with fundamentally and completely, is the argument that Mr. Carrasco's case in Arizona, 1991, under the categorical approach, does not constitute a violent felony. Well, what do you do with that Arizona State court case that says it's possible to violate that statute? The Fiero case, Your Honor? Yes. Your Honor, that case certainly is not binding on this court. No, but it's a construction of an Arizona statute by an Arizona court. Under ‑‑ yes, Your Honor, under Arizona law and not under Federal law, and that ‑‑ the Fiero decision is certainly one that predates, by my calculation, 10 years this Court's interpretation of that law in Saron Sanchez, where this Court certainly had that decision. It was available to this Court, and this Court had knowledge of it and found otherwise in Saron Sanchez. Well, yes, but since Sanchez, you've got two cases. You've got the United States v. Sandoval. Yes. And then you've got the Supreme Court case, which, while not directly on point, indicates that you have to have some real conduct to have a violent felony. In that case, it was a drunken driving case, I remember. Are you familiar with that Supreme Court case? Your Honor, I don't know the site or the style of the case. I vaguely ‑‑ I know what the case that Your Honor is referencing, but beyond that, I can't speak to it. In the Saron Sanchez case, that essentially was a drunken driving case, if you will. Yes, but that doesn't exist in the law anymore, frankly. Not in light of Leo Kelb v. Ashcroft. You haven't read that case, Supreme Court case. Your Honor, I can't speak to it here this morning. Okay. But I would suggest that there is a distinction to be drawn between the Sandoval case that Your Honor has referenced here, which recently was handed down by this Court, and it too addresses a violent felony under the categorical approach from the State of Washington. And in that case, I would suggest there's a distinction to be drawn as one in which, A, it's a Washington statute, and B, the Court did not have before it a violent crime involved an assault on a police officer. But that's the whole problem with your approach. I mean, you can't look at the specific facts, you know, of that crime. You have to look at the statute, what the statute permits. And you're not doing it. I mean, you refuse to do that. You keep referring to, well, look at this case. I mean, what happened in this case? That's what we cannot look at. Well, the statute in question here speaks to the statute itself, which Mr. Krasco was convicted involved a police officer. And that's why I referenced that, not the underlying facts. I'm not attempting to bring those before the Court. But the statute speaks to his conduct involving an assault on a police officer. And even under, even if the Court were to reject the construction, the categorical construction of this underlying felony under 924E2Bi involving a crime with the element involving the use, attempted use, or threatened use of physical force, there remains the otherwise clause that is the second part of that crime of violence definition. And because this involved a police officer, an assault on a police officer, I would suggest to the Court that the Court, this is a type of conduct that is inherently violent and it otherwise involves a serious risk of injury to another person. And the Court has found in a large category of cases where certain conduct has occurred that it meets the definition of a crime of violence because it is, for lack of a better term, inherently dangerous or violent. Well, what case do you have specifically that says that just because this is a police officer that that's the end of our inquiry? Because it seems to me that that's what you've got to have to win here. Your Honor, I don't have that. I can't give the Court a specific case where an assault on a police officer is inherently violent. I can analogize by this Court has found that pickpocketing, if you will, an individual, grand theft from the person of another, the Court has found that that involves a substantial risk of a confrontation because of the contact with another person. That's what you have when you have an assault on a police officer here. So by analogy, the Court has found that that otherwise involves a substantial risk, a serious risk of injury to another. All right. If we don't buy your argument, is there anything in this record that allows this Court to do a modified categorical approach? Your Honor, the only documents that are traditionally recognizable documents that were available at the time of sentencing were the charging instrument, which Mr. Carrasco was charged with aggravated assault. Can I have a yes or no on that? No, Your Honor. Okay. Thank you. I want to ask you one other thing. Even if you win on your contentions, wouldn't, in light of Booker and Fanfan, and then here you've got a sentence imposed on this fellow for an assault, which is an armed career or is a career criminal, he gets 21 more years. That's a sentence, 21 years and 10 months. And wouldn't that alone require a remand so that the Court could take a look at whether this was a reasonable sentence under the existing law, which now is Booker and Fanfan? I just wanted your impression of what you think about that. Your Honor, I've tried to anticipate that in view of what happened two days ago. Your Honor, the district judge in this case, the statutory minimum is 15 years if the court, as a district court, found this individual to be an armed career criminal. And the statutory maximum is life. Here the district court gave, I believe, 21, 22 years. Under the guidelines, I would suggest that that is within the realm of reasonableness and certainly ---- Is that a mandatory 15 years? It's an armed career criminal. Yes, but to make it an armed career criminal, you've got to have the underlying material, which is put up. Is that in the statute or is that in the guidelines? The statute. Okay. It's the statute. And I would just like to try to reiterate and emphasize, I know the Court has some  and physical force. The statute addresses ---- Well, is assault always physical force? Not always, but under the Arizona statute, as Saron Sanchez has addressed, it does involve physical force. This Court has found that previously. And physical force is tantamount to force against the person. And under any of the three theories of assault under the Arizona statute, it certainly involves force against the person. The only category in question here is the touching of another with an intent to injure, insult, or provoke. A touching, especially of a police officer, I would suggest is tantamount to physical force. This Court has found it to be physical force under Saron Sanchez. And I would, unless there are any other questions, I would submit it to the Court and ask that this Court affirm the District Court's finding that this individual was an armed career criminal. Thank you. I know that I don't have much time here. I do want to make two very brief points. On the ---- on the whether it's a one-year felony issue, I just want to make the point that there's ---- there is a reason to take into account the State court's declass, you know, sort of lowering the class of a particular crime, partly and particularly because the ACCA has no time limit on how old a prior can be. So allowing a court to look at how a crime has changed over a period, say, of 10 years, 20 years, 30 years, allows the court to sort of take into account the way the State's own evolving standards of criminal jurisprudence and give respect to those ---- to those policy standards. I do want to focus on whether Saron Sanchez says that there's actually physical force with respect to how that applies in my case, because I think it really goes to this one sentence in Saron Sanchez. First, Saron Sanchez says you have to have ---- physical force is actual violence. And in Saron Sanchez, there's this one sentence that says each of the three subsections requires either use, attempted use or threatened use of force against the person of another, i.e., some kind of actual violence. And by Incorporation 1204a2, which is assault with a deadly weapon, meets the definition. I don't think that you can go through that same analysis when you don't have a deadly weapon and reach the same result because ---- In other words, what you got is dictum that was not in that case. In Sanchez. In other words, it said there's every one of the parts of the statute has force, but it was really applying the deadly weapon, which does not apply to one of the elements which you're talking about. That's exactly right. I don't think you could separate half of that sentence and apply only that half of the sentence and take away the deadly weapon element and square that with Fierro. So I thank you for the Court's time. All right. Thank you. This matter will now stand submitted. The last matter on calendar is USA v. Ernesto Gutierrez Barrera. That matter, that is 0410296. That matter has been submitted on the briefs. That will conclude the Court's calendar, and the Court will stand in recess.
judges: Bright, Tashima, Callahan